United States District Court
Southern District of Texas
**ENTERED**
March 18, 2026
Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| ASIF CHOWDHURY, | § | |
| | § | |
| *Plaintiff,* | § | |
| VS. | § | CIVIL ACTION NO. 4:25-cv-467 |
| | § | |
| UNIVERSITY OF HOUSTON, *et al.*, | § | |
| | § | |
| *Defendants.* | § | |
| | § | |
| | § | |

## ORDER

Before the Court are a number of motions in the above styled and numbered case. The Plaintiff, Asif Chowdhury ("Plaintiff"), has filed an Emergency Motion for a Temporary Restraining Order, (Doc. No. 11), and a motion for a status conference, (Doc. No. 33). The Defendant University of Houston ("UH") and the Defendant Dr. Paul Kittle (collectively "Defendants") have filed a Motion to Dismiss. (Doc. No. 21). Plaintiff has responded in opposition (Doc. No. 22) and Defendants have replied in support. (Doc. No. 23). For the following reasons, the Defendants' motion to dismiss is **GRANTED**, and this case is hereby **DISMISSED**.

## I.   BACKGROUND

### A.  Procedural Background

The Plaintiff in this case is proceeding *pro se*, as is his right; however, his pleadings have not been a model of clarity. The Court previously dismissed this case but gave the Plaintiff an opportunity to replead. (Doc. No. 13). The Plaintiff has now done that. The docket sheet in this case may, at first glance, appear to be a bit confusing. Plaintiff initiated this lawsuit by filing a Complaint. (Doc. No. 1). He then, before any defendant responded, filed a First Amended Complaint. (Doc. No. 6). This was the complaint the Court dismissed. In response to the Court

allowing him an opportunity to replead, he filed a Second Amended Complaint; however, he titled this document "Response to Court's Order dated April 11, 2025." (Doc. No. 19). This is the Complaint now under consideration and is the one addressed by Defendants' Motion to Dismiss.

In this Complaint, Plaintiff pleads what he describes as claims for relief under: (1) alleged violations of due process (42 U.S.C. § 1983); (2) alleged violations of equal protection (42 U.S.C. § 1983); (3) alleged violations of Title VI of the Civil Rights Act; (4) alleged violations of the Age Discrimination Act of 1975; and he seeks declaratory and injunctive relief for what he describes as Defendants' unlawful actions.

### B. Factual Background

Plaintiff bases his lawsuit on what he perceives as improper or illegal actions perpetrated by UH's student government while he was a graduate student in (and student senator for) the University's school of social work. He has since graduated.

He alleges that on November 6, 2024, a meeting took place between Dr. Paul Kittle (who at the time was Vice President of Student Affairs), Diego Arriaga (who was President of the student government association), and Tav Cockrell (who was speaker of the UH student senate). Plaintiff alleges that both Arriaga and Cockrell were also UH employees. Apparently, at the time there were some amendments and changes being considered to the Constitution and Bylaws of the student government organization. Plaintiff contends at this meeting Kittle "suggested or implied" that there was a need for these changes to be made by November 25, 2024. Plaintiff did not attend this meeting, so his entire knowledge of this meeting is at best second-hand and based upon hearsay.

Following the meeting, Arriaga and Cockrell announced that only the executive officers of the student government association (which thereby excluded senators like the Plaintiff) would be involved in the drafting of the new documents. It is this exclusion that is the basis of Plaintiff's

2

Complaint. Plaintiff alleged that a few months later, he and some other senators instituted an impeachment as to Arriaga, but they were unsuccessful.

Ultimately, Plaintiff claims that he was excluded from these redrafting opportunities, certain leadership roles, and committee assignments because he was a Muslim and as a graduate student was older than those students that were afforded these opportunities.

## II.   LEGAL STANDARDS

Defendants have moved to dismiss under Rule 12(b)(1) and Rule 12(b)(6).

### A.  Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction and must have statutory or constitutional power to adjudicate a claim. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). A federal court has original jurisdiction to hear a suit when it is asked to adjudicate a case or controversy that arises under federal-question or diversity jurisdiction. U.S. Const., art. III, § 2, cl. 1; 28 U.S.C. §§ 1331–32. Whether a federal court has jurisdiction must "be established as a threshold matter" and "is inflexible and without exception." *Webb v. Davis*, 940 F.3d 892, 896 (5th Cir. 2019) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998)). A Rule 12(b)(1) motion to dismiss allows a party to challenge the exercise of the Court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). In analyzing a motion to dismiss under Rule 12(b)(1), a court may consider: (1) the complaint alone; (2) the complaint supplemented by undisputed facts or evidence in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). Plaintiff, as the party asserting jurisdiction, bears the burden of proof to defeat a Rule 12(b)(1) motion to dismiss. *Id.*

3

### B. Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim

A defendant may file a motion to dismiss a complaint for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). Similarly, a plaintiff may file a Rule 12(b)(6) motion to dismiss a counterclaim. *See Kansas v. Nebraska*, 527 U.S. 1020 (1999). To defeat a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). The Court is not bound to accept factual assumptions or legal conclusions as true, and only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 678–79. When there are well-pleaded factual allegations, the court assumes their veracity and then determines whether they plausibly give rise to an entitlement to relief. *Id.*

4

### III.   ANALYSIS

#### A.  State Law Claims

Chowdhury makes many claims based upon Texas state law, including fraud, conspiracy to commit fraud, coercion, intentional infliction of emotional harm, "procedural violations," and negligence. The only waiver of the state's sovereign immunity is through the Texas Tort claims Act ("TTCA"). Tex. Civ. Prac. & Rem. Code § 101.001 *et seq*. This immunity covers not only state agencies, but it also covers universities and their employees. *See Thongsonlone v. Off. Of the Atty. Gen. for Texas*, No. 4:18-CV-0476, 2018 WL 1898457, at *1 (S.D. Tex. Apr. 20, 2018). There is no applicable waiver of this immunity for the state law claims made by Plaintiff.

Moreover, the Eleventh Amendment bars a claim in federal court made against a state or their agents and employees. As an agent of the State of Texas, UH and its employees are entitled to Eleventh Amendment immunity absent waiver or abrogation. *See Johnson v. Prairie View A&M Univ.*, 587 F. App'x 213, 214 (5th Cir. 2014); *Lowery v. Univ. of Hou.-Clear Lake*, 82 F. Supp. 2d 685, 693 (S.D. Tex. 2000).

Plaintiff not only makes these state-law based claims against the University of Houston, but also against Kittle, Arriaga, and Cockrell. When reviewing a motion to dismiss, the Court is required to accept the facts as pleaded to be true. Plaintiff has pleaded that all of the individual defendants, including Arriaga and Cockrell, are employees of the University. That being the case, like the University, they are not subject to being sued in federal court due to the Eleventh Amendment to the Constitution. They are also immune from Plaintiff's state law claims due to sovereign and qualified immunity.

## B. Fourteenth Amendment Claims

Plaintiff pleads claims under the Fourteenth amendment for both violations of due process and equal protection. This amendment cannot be used as the basis one uses to pursue these claims. "Section 1983 is the proper vehicle for a claim alleging that a state official has violated the Plaintiff's rights under the Fourteenth Amendment." *Planned Parenthood of Houston & Se. Texas v. Sanchez*, 480 F.3d 734, 738 (5th Cir. 2007). Moreover, any such claims against a state or state agency are barred by sovereign immunity. *Block v. Texas Bd. of L. Examiners*, 952 F.3d 613, 620 (5th Cir. 2020).

## C. Section 1983 Claims

Perhaps recognizing that Section 1983 is the proper vehicle to raise these alleged violations, Plaintiff has also pleaded a 1983 claim as well. Once again, however, Eleventh Amendment immunity presents a problem. "Section 1983 does not abrogate Eleventh Amendment Immunity," *Champagne v. Jefferson Parish Sheriff's Office*, 188 F.3d 312, 314 (5th Cir. 1999); *Quern v. Jordan*, 440 U.S. 332, 342 (1979), and Texas has not waived its immunity.

As to the individual Defendants, Plaintiff does not specify in what capacity they are sued. Certainly by implication he has gone out of his way to cast them as acting employees of the University, which would be in the official capacity.

> When a pro se plaintiff does not specify in his complaint whether a defendant is named in his or her official or individual capacity, it is generally presumed by operation of law that the defendant is named in his or her official capacity. *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 619 (8th Cir. 1995); *Soper v. Hoben*, 195 F.3d 845, 853 (6th Cir. 1999); *Wells v. Brown*, 891 F.2d 591, 593 (6th Cir. 1989); *but see Biggs v. Meadows*, 66 F.3d 56 (4th Cir. 1995) (examining complaint to determine capacity in which defendant is sued); *Larez v. City of Los Angeles*, 946 F.2d 630 (9th Cir. 1991) (presuming that defendant is sued in both capacities if complaint is silent).

*Douglas v. Gusman*, 567 F. Supp. 2d 877, 888–89 (E.D. La. 2008).

6

Since the individual defendants are sued in their official capacities, they are not considered persons for Section 1983 purposes. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). That being the case, they, too, are also entitled to the protection of the Eleventh Amendment.

### D. Title VI

Congress did abrogate sovereign immunity under Title VI of the Civil Rights Act of 1984, which means states can be sued. *McCardell v. U.S. Dep't of Hous. & Urb. Dev.*, 794 F.3d 510, 522 (5th Cir. 2015).

The Defendants' motion sets out the accurate law adequately:

### 1. Title VI of the Civil Rights Act

"To prevail on a claim for relief under Title VI, a private litigant must prove: (1) that the defendant engaged in *intentional discrimination* based on race, color, or national origin; and (2) that the defendant received federal financial assistance." *Pathria v. Univ. of Tex. Health Sci. Ctr. at San Antonio*, 531 F. App'x 454, 455 (5th Cir. 2013) (emphasis added). A Title VI claim must set forth "specific allegations of acts that were taken with discriminatory intent". *Mohamed v. Irving Indep. Sch. Dist.*, 252 F. Supp. 3d 602, 627 (N.D. Tex. 2017). To survive a motion to dismiss, the allegations must create a reasonable inference that the supposed discriminatory conduct was motivated by a plaintiff's race. *See Pathria*, 531 F. App'x at 455 (citing *Ricci v. DeStefano*, 557 U.S. 557, 577, 129 S. Ct. 2658, 174 L. Ed. 2d 490 (2009)). Entities cannot be held vicariously liable under Title VI. *See Mohamed*, 252 F. Supp. 3d at 628 (citing *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 285-88, 118 S. Ct. 1989, 141 L. Ed. 2d 277 (1998)). When a Title VI claim does not involve an official policy of intentional discrimination, a plaintiff must allege an "appropriate person—an official authorized to institute corrective measures—had actual knowledge of the discrimination and responded with deliberate indifference." *Id.* at 627 (citing *Gebser*, 524 U.S. at 290).

(Doc. No. 23 at 7).

Defendants have questioned not only whether Plaintiff has adequately pleaded a Title VI claim but also whether he has standing to make such a claim. Obviously, if he has no standing, this Court would have no jurisdiction to hear his claim. A Title VI claim must set forth "specific allegations of acts that were taken with discriminatory intent." *Mohamed*, F. Supp. 3d at 627. The

facts alleged must create a reasonable inference that the supposed discriminatory conduct was motivated by a plaintiff's race. *Pathria*, 531 F. App'x at 455.

Here, the Plaintiff's allegations support the opposite inference. The basis of his Complaint is that the student government leaders limited the drafting of the new student government documents to those who held executive positions—thus, excluding all senators, including the Plaintiff. The Court quotes just a few passages from the Complaint:

> **4.4 Procedural Exclusion and Misrepresentation:** In the subsequent Senate meeting (second week of November 2024), Arriaga and Cockrell publicly announced that only SGA executive officers—excluding elected Senators—had authority to draft and amend the new governance documents. *Senators, including Plaintiff,* repeatedly sought clarification of their legislative roles but were consistently misled by Arriaga and Cockrell, who falsely attributed these procedural restrictions directly to Dr. Kittle. *This intentional misrepresentation severely limited Senators' ability to participate meaningfully in legislative functions.*

> **4.5 Constitutional and Statutory Violations:** The exclusionary actions by SGA leadership directly contravened Articles III and V of the SGA Constitution, mandating inclusive participation, transparency, and defined legislative procedures. *These violations deprived Senators of procedural fairness and due process rights protected under the First and Fourteenth Amendments, 42 U.S.C. § 1983, and Title VI of the Civil Rights Act, disproportionately impacting minority senators and students.*

> **4.6 Operational and Communication Failures:** Despite assurances of transparency, *Senators had not received draft documents* by November 18, impairing their ability to adequately review, deliberate, and propose amendments ahead of the imposed November 26 deadline. *The deadlines deliberately coincided with Senators' academic responsibilities,* adding further obstruction, undue stress, and impairing effective legislative participation.

(Doc. No. 19 at 5) (emphasis added).

Each of the actions complained about affected all of the senators, not just the Plaintiff. This Court can find no inference of discriminatory intent. These actions affected all of the senators regardless of whether they were white female Christians born in Texas or a Muslim of Bangladeshi

descent, like Plaintiff. The issue of whether the student government at the University of Houston did not follow their own by-laws or procedures is not a matter for this Court.

The Court finds that the actual facts pleaded by Plaintiff do not support any inference of intentional discrimination based upon race, color, or national origin.

### E.  Age Discrimination Act of 1975

Finally, Plaintiff brings a claim under the Age Discrimination Act of 1975. While he does not inform the Court of his age, it is a somewhat reasonable generalization to presume that since he was a graduate student he was somewhat older than the average undergraduate students. Nevertheless, he provides no factual pleadings that, if true, would enable anyone to conclude he was discriminated against based upon his age, much less because of his religious or ethnic background.

The purpose of the Age Discrimination Act of 1975 is "to prohibit discrimination on the basis of age in programs or activities receiving Federal financial assistance." 42 U.S.C. § 6101. The Act further provides that "no person in the United States shall, on the basis of age, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any program or activity receiving Federal financial assistance." 42 U.S.C. § 6102. It protects people of all ages.

Congress has waived Eleventh Amendment Immunity under the Age Discrimination Act of 1975. *Civil Rights Remedies Equalization*, 42 U.S.C.A. § 2000d-7. Essentially, Congress has conditioned federal funding on the states' waiver of sovereign immunity under these specific statutes. The Fifth Circuit has analyzed this statute's specific conditional waiver and found it was valid. In that analysis, it applied the *South Dakota v. Dole* factors to analyze the conditional waiver

9

under Congress' spending power. *Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 280 (5th Cir. 2005) (citing *South Dakota v. Dole*, 483 U.S. 203 (1987)).

In order to bring an age discrimination claim against a recipient of federal financial assistance, a plaintiff must satisfy two requirements. First, the plaintiff must exhaust administrative remedies. 42 U.S.C. § 6104(f); 34 C.F.R. § 110.39(a). Second, the plaintiff "shall give notice by registered mail not less than 30 days prior to the commencement of that action to the Secretary of Health and Human Services, the Attorney General of the United States, and the person against whom the action is directed." *Parker v. Bd. of Sup'rs Univ. of Louisiana-Lafayette*, 296 F. App'x 414, 417 (5th Cir. 2008).

Plaintiff has not complied with either of the prerequisites. Consequently, this claim must also be dismissed.

## IV.   CONCLUSION

The Court finds that this case must be dismissed. The Court has dismissed it once before for inadequate pleadings, but in an abundance of caution, allowed Plaintiff a chance to replead. He has now filed three successive Complaints. That being the case, this Court finds that there is no need to allow him a fourth chance to plead a sustainable cause of action.

The Court, therefore, **DISMISSES** this case.[1] The Texas common law causes of action are **DISMISSED** without prejudice, as are the Section 1983 claims. The Age Discrimination claims and claims based upon the Fourteenth Amendment and Title VI are **DISMISSED** with prejudice. The remaining pending motions are denied as moot. (Doc. Nos. 11, 33).

It is so ordered.

Signed on this the ___18th___ day of March, 2026.

Andrew S. Hanen
United States District Judge

---

[1] The Court is dismissing Plaintiff's claims against all Defendants, despite the fact that the Motion to Dismiss was submitted by the University and Dr. Kittle. Cockrell was served, (Doc. No. 15), but never answered this suit; Arriaga was never served. Neither filed a motion to dismiss. Nevertheless, a district court may dismiss a cause *sua sponte* (or on its own motion) for failure to state a claim "as long as the procedure employed is fair." *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1177 (5th Cir. 2006). Generally, a district court should not dismiss a *pro se* complaint for failure to state a claim unless the plaintiff is given the opportunity to amend. *Id.*; *Moawad v. Childs*, 673 F.2d 850, 851–52 (5th Cir. 1982). As the Court detailed, Plaintiff was already afforded an opportunity to replead and properly state a claim for relief. (Doc. No. 13). Accordingly, this Court finds that the procedure employed here is fair.